UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| KENNETH A. RILEY and<br>SHEILA E. RILEY | |
| Debtors. | Case No. 11-31530<br>Chapter 7 |
| KENNETH A. RILEY and<br>SHEILA E. RILEY | |
| Plaintiffs, | Adv. Proc. No. 11-03041 |
| vs. | |
| U.S. DEPARTMENT OF AGRICULTURE<br>RURAL DEVELOPMENT | |
| Defendant. | |

**MEMORANDUM OPINION**

These matters came before the Court on the United States of America's Motion for Summary Judgment on behalf of its agency, United States Department of Agriculture, Rural Housing Service ("USDA RHS") (Doc#25), and the Plaintiffs' Motion for Summary Judgment (Doc#26). On February 24, 2012, the parties filed a Joint Stipulation of Facts (Doc#24). Both parties filed responses to the motions for summary judgment and supplemental exhibits. For the foregoing reasons, the Court finds that the Plaintiffs, the above named chapter 7 debtors, are entitled to summary judgment as a matter of law.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (E),

and (G). The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The parties stipulated to the following facts:

Kenneth A. Riley and Sheila E. Riley (the "Rileys" or "Plaintiffs" or "Debtors") are calendar year taxpayers. Their tax year ends on December 31. On August 29, 1989, the Rileys executed a note to Farmers Home Administration ("FmHA") in the face amount of $39,500 with interest at 9.0% per annum. A mortgage was executed by the Rileys to FmHA, which was recorded on August 29, 1989, in Marion County, Mortgage Book 117, Page 480. A Subsidy Repayment Agreement was executed by the Rileys on August 29, 1989.

Under 31 U.S.C. § 3720A, the USDA RHS sent a notice to each Riley on October 16, 1998, informing each debtor of its intent to notify the Secretary of the Treasury of the past due status of the debt and giving the debtors 60 days to present evidence that such debt was not past due or not legally enforceable. The notice was mailed to each Riley at 215 Garrett Lane, Lebanon, Kentucky. The USDA RHS referred the foreclosure to United States Department of Justice. The United States Attorney's Office filed the foreclosure action in Federal District Court, Western District of Kentucky, Action Number 3:08-CV-129-H on February 28, 2008. On May 1, 2008, Judgment and Order of Sale was entered. On July 10, 2009, the District Court ordered the final distribution of the proceeds, with $40,261 sent to the USDA RHS.[1]

On May 8, 2010, USDA RHS, for the purpose of setoff against the debtor of any federal

---

[1] Although not relevant to the outcome of these proceedings, the Court does not have sufficient information to determine how a $40,261 payment on a $39,500 note from 1989 still resulted in a deficiency.

2

payments due to the debtor, certified to the Secretary of the Treasury that the debt was past due in the amount of $8,534.84. From time to time USDA RHS has re-certified to the Secretary of the Treasury that this debt was past due for various amounts.

On March 25, 2011, the Rileys filed a Chapter 7 case under the Bankruptcy Code in the Western District of Kentucky, Case No. 11-31530. Plaintiffs listed a tax refund of approximately $1,500 in their Schedule B and claimed the refund as exempt in their Schedule C. Plaintiffs listed Defendant, USDA RHS, as a creditor in the petition. Plaintiffs filed their tax return after the filing of the petition. On May 12, 2011, the Chapter 7 Trustee filed a "Report of No Distribution." Shortly after the filing of the "Report of No Distribution," the Debtors received notice that their joint tax refund in the amount of $5,140 had been intercepted, attached or otherwise claimed by the Defendant post-petition. On May 26, 2011, $5,123 was credited to the Rileys' account based on an offset from Treasury. The amount offset by Treasury was $5,140. Treasury withheld a $17 fee and forwarded to USDA RHS $5,123. The sum of $5,123 is currently held in an "Unapplied Funds" account by the USDA RHS.

On June 24, 2011, an Entry of Appearance and Request for Notice was filed by USDA RHS. The Debtors' schedules were amended to reflect the greater tax refund amount on June 30, 2011. Discharges in this joint Chapter 7 case were entered on July 12, 2011.

## DISCUSSION

Summary judgment is appropriate under Federal Rule of Bankruptcy Procedure 7056 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056; *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties have filed a joint stipulation of facts and under the applicable law discussed hereinafter, the Rileys are entitled to judgment in their favor as a matter of law.

Approximately two months after the Debtors filed their Chapter 7 petition, the United States Treasury, pursuant to 31 U.S.C. § 3720A, setoff $5,123 from the total debt owed by the Debtors on a defaulted mortgage guaranteed by USDA RHS. The $5,123 represented the Debtors' federal income tax refund, less a $17 fee taken by the Department of the Treasury. When the Debtors filed their Chapter 7 petition, they had claimed an exemption in an expected $1,500 income tax refund.[2] The Debtors filed their 2010 tax return post-petition. Debtors instituted this adversary proceeding on July 8, 2012, four days before the entry of their Chapter 7 discharge, contending they were entitled to turnover under 11 U.S.C. § 522 and § 542(a). In their summary judgment motion, the Debtors also allege that the trustee could have avoided the transfer as a preference under 11 U.S.C. § 547.[3] The USDA RHS argues that the overpayment never became a refund so there is no property to which the exemption could attach. It argues that under 11 U.S.C. § 553(a), the Debtors would not have a right to the overpayment until the

---

[2] The Debtors amended Schedule B and Schedule C to reflect the larger tax refund amount. Neither the USDA RHS nor the Chapter 7 Trustee filed an objection to the Debtors' claim of exemptions. Fed. R. Bankr. P. 4003(b)

[3] The Court notes that in order for a transfer to be avoidable as a preference, by definition, it must occur pre-petition. *See* 11 U.S.C. § 547(b)(4). Additionally, there must be a "transfer" of an interest of the debtor. The definition of "transfer" does not include the term "setoff". *See* 11 U.S.C. § 101(54). The legislative history explains the omission: "inclusion of 'setoff' is deleted. The effect is that a 'setoff is not subject to being set aside as a preferential 'transfer' but will be subject to special rules." *See* 5 Collier on Bankruptcy ¶ 553.09[2][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev.). As discussed below, however, there is an issue with the USDA RHS improving its position via the setoff. *See* 11 U.S.C. § 553(b).

I.R.S. has completed the statutory setoff under 31 U.S.C. § 3720A.

## I. Does § 553 Apply?

Section 553(a) states that

> [e]xcept as otherwise provided in this section and in sections 362 and 364 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a). In order to avoid "the absurdity of making [$A_1$] pay B when B owes [$A_2$]," the U.S. Supreme Court has recognized the right of set-off in the context of bankruptcy proceedings. *Citizens Bank v. Strump*, 516 U.S. 16, 16 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Section 553(a) does not create a federal right of set-off, but instead preserves a right of set-off outside of bankruptcy when certain conditions are met. *Id.* Those conditions include: "(1) the creditor holds a claim against the debtor that arose before the commencement of the case; (2) the creditor owes a debt to the debtor that arose before the commencement of the case; and (3) the claim and debt are mutual." *In re Harrison*, 383 B.R. 398, 400 (Bankr. W.D.Ky. 2008). Since the majority of the courts "consider the federal government to be a single-entity that is entitled to set off one agency's debt to a party against that party's debt to another agency," even though this situation involves the IRS ($A_1$) owing the Debtors and the Debtors owing the USDA RHS ($A_2$), the USDA RHS has a right of set-off. *Miller v. U.S.*, 422 B.R. 168, 171 (W.D. Wis. 2010); 5 Collier on Bankruptcy, ¶ 553.03[3][b], p. 553-31 (16th ed.).

### A. When did the Creditor's Debt to Debtors Arise?

The Debtors, among other things, argue that although it is clear that their obligation to USDA RHS arose pre-petition, the IRS did not owe them a tax refund until they filed their

return, post-petition. The USDA RHS argues that the IRS owed the Debtors an undetermined amount of money on January 1, 2011, in the form of a potential tax refund, and therefore the mutual debts arose pre-petition. When the Debtors filed their 2010 Federal Tax Return, post-petition, the exact amount owed by the IRS became set at $5,140. That does not mean that the IRS did not owe the Debtors a refund, albeit of undetermined amount, prior to the filing of the 2010 tax return. "For the purposes of § 553, income tax refunds are 'absolutely owing' on December 31 of the year in which the overpayment is made or the liability accrues. . . . The date the return is actually filed is not relevant in determining when the debt arose." *See In re Eggemeyer*, 75 B.R. 20, 21–22 (Bankr. S.D. Ill. 1987), *In re Mason*, 79 B.R. 786, 788 (Bankr. N.D. Ill. 1987); *In re Rozel Indus., Inc.*, 120 B.R. 944, 950 (Bankr. N.D. Ill. 1990); *In re Runnels*, 134 B.R. 562 (Bankr. E.D. Tex. 1991). On January 1, 2011, the Debtors had a contingent right to their tax refund, and, therefore, the IRS owed a debt to the Debtors at that time.

### B. Do the Exceptions in 11 U.S.C. §§ 553(a) & (b) Apply?

While § 553(a) preserves the creditor's setoff rights in general terms, certain exceptions establish the limitations on the right to set-off. *See* 11 U.S.C. §§ 553(a)(1)–(3) and 553(b). Section 553(a)(1) does not allow setoff if the claim has been disallowed. Section 553(a)(2) does not allow setoff when an entity other than the debtor has transferred the claim to the creditor during the 90 days pre-petition while the debtor was insolvent, which is presumed.[4] Section

---

[4]An "entity" includes a "governmental unit." *See* 11 U.S.C. 101(15) and (27). While various government agencies are treated as a unified creditor for purposes of mutuality of debt, *see Miller v. U.S.*, 422 B.R. at 171, it could be argued that in this case an entity other than the debtor (e.g., the USDA RHS) has transferred its claim to the creditor, the IRS, who has exercised setoff. As this case can be resolved without delving into this statutory quagmire, the Court will

553(a)(3) does not allow setoff when the creditor incurs its debt during the 90 days pre-petition for the purpose of obtaining a right to setoff.[5] None of the paragraphs or subparagraphs of § 553(a) apply in this case. The Debtors have not objected to the claim of the USDA RHS, so it is an allowed claim. There has not been a transfer of the claim except for the possible transfer discussed *supra*. The IRS did not incur its debt to the debtor for the purpose of offsetting against the USDA RHS debt. Finally, the Plaintiffs have not argued that the exceptions of § 553(a) apply in this case.

Section 553(b) establishes a 90-day look-back period in which the trustee may recover any offset taken during that period to the extent that the creditor has improved its position during that period. The Debtors filed their Chapter 7 petition on March 25, 2011. Ninety days prior to the petition date was December 26, 2010. On that date there was no right to set-off because the overpayment was not absolutely owing to the Debtors. *See In re Eggemeyer*, 75 B.R. at 21–22. The purpose of § 553(b) is to remove the creditor's temptation to take a set-off when its position is improved by conduct during the 90-day preceding the petition. *See Lee v. Schwieker*, 739 F.2d 870, 877 (3d Cir. 1984); H.R. Rep. No. 595, 95th Cong. 2d Sess. At 195 (1978). "The concern of Congress in enacting the improvement in position test was that creditors . . . would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the 'insufficiency,' to the detriment of the other creditors." *Id.* The USDA RHS should have been

---

refrain from considering it.

[5]It could be argued that the IRS requires taxpayers to pay withholding in order to generate a fund against which it can offset current year tax liability. The IRS, therefore, would be incurring its debt to the taxpayer for the purpose of obtaining the right to offset. Since neither party has presented this argument, the Court will not address it further.

aware of the financial difficulties that the Debtors were having.  It had recently completed foreclosure proceedings against the Debtors and had filed periodic reports with the IRS on the amount still owed.  During the 6 days from December 26, 2010, to January 1, 2011, the USDA RHS clearly improved its position when the IRS became indebted to the Debtors on January 1, 2012.  It went from having no right of setoff to having a right of setoff.  Thus by the clear language of § 553(b), the USDA RHS could not gain a right to set-off the tax refund when the IRS became indebted on January 1, 2011.

Some courts have applied § 553(b) "improvement of position" to post-petition actions. *Compare, for example, Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F2d 1030, 1041 n.13 (5th Cir. 1987) ("If Exxon wants to rely on a pre-petition right to setoff pursuant to section 553, it must comply with both sections 553(a) and 553(b)."), *with Heckathorn Constr. Co. v. Bass Mechanical Contractors, Inc. (In re Bass Mechanical Contractors, Inc.)*, 88 B.R. 201, 204 (Bankr. W.D. Ark. 1988).  According to Collier on Bankruptcy, the better result is "to limit section 553(b) to setoffs actually taken prepetition. . . . [T]hat result is consistent with the underlying purpose of section 553, which [is] to encourage creditors *not* to take setoffs by generally preserving their setoff rights."  5 Collier on Bankruptcy, ¶ 553.09, at 89.

The Bankruptcy Code establishes a 90-day look-back period to protect a debtor from the possible detriment caused by a creditor improving its position and then taking a setoff during a time of presumed insolvency.  Additionally, because the USDA RHS never requested relief from the automatic stay,[6] other courts would suggest that considering the improvement in position test

---

[6]The Court cannot conclude that the Defendant willfully violated the automatic stay.  *See* 11 U.S.C. § 362(k).  The filing of the bankruptcy on March 25, 2011, operated as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this

8

becomes mandatory. *See Tavormina v. ITT Commercial Fin. Corp. (In re Aquasport, Inc.)*, 115 B.R. 720, 722 (Bkrtcy.S.D.Fla.,1990), *aff'd*, 155 B.R. 245 (S.D. Fla. 1992), *aff'd without op.*, 985 F.2d 579 (11th Cir. 1993) ("According to established precedent, this Court can weigh the improvement of position test even in a post-petition setoff situation, and appears bound to do so where no relief from the automatic stay has been requested by the creditor."). The USDA RHS cannot take advantage of its improved position by being patient and waiting for the filing of a bankruptcy petition. It is not losing a right to setoff that it had pre-petition but merely not gaining one which § 553(b) would prevent.

## II. Do the Debtors' Exemptions under 11 U.S.C. § 522(c) Trump 11 U.S.C. § 553?

The starting point in analyzing the interplay between § 522(c) and § 553 is the recognition that exemptions for the debtor are strongly favored. *See, for example, Doethlaff v. Penn Mut. Life Ins. Co.*, 117 F.2d 582, 584 (6th Cir. 1941) (dealing with an exemption statute which is entitled to a construction liberal to the debtor).

### A. Majority Position

This district first addressed the issue in *In re Alexander*, 225 B.R. 145 (Bankr. W.D. Ky. 1998). At that time, a majority of the courts having considered the matter concluded that

---

title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Relying on *Miller*, this Court sees the glitch in the government's computer program as resulting in only a technical violation of the stay. *Miller v. U.S.*, 422 B.R. 168, 170 (W.D. Wis. 2010). It is unclear from the facts whether the USDA RHS has actually setoff since the monies are currently being held as "Unapplied Funds". The government, however, should be aware of the possibility of a different result based on very similar facts. *See In re Price*, 42 F.3d 1068, 1071 (7th Cir. 1994). Furthermore, at some point, the government should not be allowed to continue to rely on the failure of its computer software to prevent violations of the automatic stay.

9

"property exempted from the estate pursuant to § 522 may not be the subject of set-off."[7] *Id.* at 148. Finding the reasoning behind the majority rule to be persuasive, the court held that § 522 must be given priority over § 553. *Id.* at 149. Relying on the canon of statutory construction that "when two provisions of a statute are in conflict they should be interpreted in such a fashion as to give meaning to the whole." *Id.* (citing *Miel*, 134 B.R. at 235; *In re Monteith*, 23 B.R. 601, 603 (Bankr. N.D. Ohio 1982)). These courts view allowing set-off against the debtor's exempt assets as rendering § 522(c) without effect or meaning. *Id.* Limiting the right of set-off under § 553 to non-exempt property, however, gives effect to both sections. *Id.*

The *Alexander* court also recognized that this holding would provide the debtor with a fresh start. *Id.* The U.S. Supreme Court stated that the Bankruptcy Code should be construed in harmony with providing "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Exemptions promote the "fresh start" by not depriving a debtor of the basic means of survival. *In re Alexander*, 225 B.R. at 149. They "allow the debtor to emerge from bankruptcy with enough assets to begin again." *Id.* at 150 (quoting *In re Wilde*, 85 B.R. 147, 148 (Bankr. D.N.M. 1988)). The *Alexander* court then reviewed the amount of exempt assets subject to set-off and found that allowing set-off would

---

[7] The courts following the majority view have included: *In re Monteith*, 23 B.R. 601, 602–04 (Bankr. N.D. Ohio 1982); *In re Cole*, 104 B.R. 736, 736–39 (Bankr.D.Md.1989); *In re Wilde*, 85 B.R. 147, 148–49 (Bankr.D.N.M.1988); *In re Thompson*, 182 B.R. 140, 153–54 (Bankr.E.D.Va.1995), aff'd, *149 92 F.3d 1182 (4th Cir.1996); *In re Cabrillo*, 101 B.R. 443, 448–49 (Bankr.E.D.Pa.1989); *In re Davies*, 27 B.R. 898 (Bankr.E.D.N.Y.1983); *In re Terry*, 7 B.R. 880, 883 (Bankr.E.D.Va.1980); *In re Miel*, 134 B.R. 229, 236 (Bankr. W.D. Mich. 1991); *In re Haffner*, 12 B.R. 371, 373 (Bankr.M.D.Tenn.1981); *In re Laues*, 90 B.R. 158, 160–61 (Bankr.E.D.N.C.1988); *In re Cole*, 104 B.R. 736, 741 (Bankr. D. Md. 1989).

eliminate 81% of the debtor's exempt assets. *Id.* In balancing the fresh start with equity among creditors, the court found that the large proportion subject to set-off weighed in favor of the former. *Id*. In the case *sub judice*, the Debtors have claimed exemptions for their federal tax refund of $5140 (11 U.S.C. § 522(d)(5)); 1995 Chevy Corsica (FMV $800); household furnishing (FMV $1250); mower and tools (FMV $80); wedding rings ($120); and $500 in their bank account. Allowing the set-off of exempt assets would reduce the debtors' post-petition assets by 65%.

Finally, the *Alexander* court looked at the legislative history to find that exempt property should not be liable for discharged tax debts. *Id.* at 150. A proposed version of § 522(c) would have allowed exempt property to remain liable for discharged taxes. Senate Bill 2266; S.R. No. 950989, 95th Cong. 2nd Sess. 76 (1978), U.S.C.C.A.N. 1978, pp 5787, 5862. The court rejected the I.R.S.'s argument that this section only disallowed the collection, not the set-off of dischargeable taxes from exempt assets as raising form over substance. The court also rejected the application of § 542(b) because once the debtor properly exempted the refund, it did not become property of the estate, so the I.R.S. did not owe a debt that is property of the estate, but rather owed an exempt debt. Since the Trustee did not pursue that debt, the debtor could seek turnover pursuant to subsection 522(g) and (h). *Alexander*, 225 B.R. at 150.[8]

The majority of courts, outside the Western District of Kentucky, also have concluded

---

[8]The Court notes that in both *In re Harrison*, 383 B.R. 398 (W.D. Ky. 2008), and *In re Houchens*, 384 B.R. 472 (W.D. Ky. 2008), the IRS was permitted to setoff the tax refund against a debt owed to the USDA. These cases, however, distinguished *Alexander* based on the timing of the set-off. In *Alexander*, the setoff occurred post-petition, as it did in this case. In *Houchens* and *Harrison*, the setoffs occurred pre-petition, and since the courts found no improvements in position during the 90 day period, it allowed the setoffs.

11

that property subject to exemptions could not be set-off. It is emphasized that no party in interest objected to the Debtors' claim of exemptions pursuant to Federal Rule of Bankruptcy Procedure 4003(b). In *Monteith*, the debtor sought to avoid a post-petition set-off made by the I.R.S. 23 B.R. at 601. The IRS had set-off against a 1977 tax assessment. *Id.* The debtor had claimed a $400 exemption in his 1981 tax refund and with no objections, it became exempt property. *Id.* at 602. Recognizing that allowing the set-off would nullify § 522(c) and that the legislative history shows "that Congress did not intend that exempt property be liable to the payment of dischargeable tax debts, whether by set-off or otherwise," the *Monteith* court held that the tax refund was not liable to the claim of a creditor. *Id.* at 603–04. The court allowed the IRS to retain the monies set-off over and above the $400. *Id.* at 604. The court then concluded that the avoided set-off would be applied against the debtor's 1980 non-dischargeable tax debt with any remaining funds to be turned over to the debtor. *Id.*

### B. Minority Position

In 2010, the District Court in the Western District of Wisconsin still recognized this as the majority position. *Miller v. U.S.*, 422 B.R. 168, 172 (W.D. Wis. 2010). The court suggested that the majority is eroding. *Id.* Courts, like *In re Bourne*, 262 B.R. 745, 753–54 (Bankr. E.D. Tenn. 2001), follow the minority position based on a variety of rationale. This minority view has been growing over the last several years.[9]

Applying the canon that "where there is an irreconcilable conflict between different parts

---

[9] Courts that have followed the minority view include: *Wiegand v. Tahquamenton Area Credit Union (In re Wiegand)*, 199 B.R. 639 (W.D. Mich. 1996); *Posey v. IRS*, 156 B.R. 910 (W.D.N.Y. 1993); *In re Eggemeyer*, 75 B.R. 20 (Bankr. S.D. Ill 1987); *In re Runnels*, 134 B.R. 562 (Bankr. E.D. Tex. 1991); *In re Kadrmas*, No. 00–31138, 2000 WL 33364195 (Bankr. W.D. Wis. Sept. 19, 2000); *In re Gould*, 401 B.R. 415 (9th Cir. 2009);

of the same act, the last in order of arrangement will control," the Ninth Circuit Bankruptcy Appellate Panel held that § 553 would control over § 522 when the two statutes conflicted. *In re Pieri*, 86 B.R. 208, 212–13 (9th Cir. B.A.P. 1988). The *Gould* case on which the USDA RHS relies, however, never addressed this issue because it decided that the IRS would have to determine whether the taxpayer was entitled to the refund before an exemption could attach. *In re Gould*, 401 B.R. 415, 426 (9th Cir. B.A.P. 2009). *Gould*, however, dealt with tax liability being offset against tax overpayment, thus implicating only the first clause of I.R.C. § 6402(a). *Id.* Additionally, *Gould* involved a chapter 13 debtor, not a chapter 7 debtor such as this case, where the curtain slams shut as of the petition date.

Courts have also relied on § 542(b) to hold that "a creditor's setoff right is not defeated by an exemption." *In re Wiegand*, 199 B.R. 639, 643 (W.D. Mich. 1996). The majority position relies on § 542(a) because it finds subsection (b) to only be applicable to property of the estate. *See In re Alexander*, 225 B.R. at 150–51. By taking the exemption, the exempt property does not become property of the estate and is not subject to turnover as such. *Id.* The minority courts hold that exempted property can still be property of the estate if it is subject to set-off, contrary to the language of § 522(b)(1) which exempts property from becoming part of the estate.

Courts have also disagreed over which position would nullify a section of the Code. The majority position is that allowing a right to setoff to trump exemptions nullifies § 522(c)(1). The minority position is that allowing exemptions to trump setoff nullifies § 553. The minority courts reason that because a debtor can still exempt other property not subject to a setoff, the debtor is still able to use its exemptions, thus preserving § 522(c)(1). But § 553 only preserves the non-bankruptcy right to setoff in general terms. It has exceptions to this preservation, such

13

as when a creditor acquires a debt for the purposes of setoff or when a creditor has improved its position during the 90 days preceding the bankruptcy. A creditor with a right to set-off would still be able to use it against non-exempt property. If the tax refund in this case exceeded the Debtors' exemption, the USDA RHS would clearly be entitled to exercise its right to setoff.

### C. Emerging Position

An emerging view of this issue is that the "refund is the balance of the overpayment after it has been applied to past tax liabilities. *Jones v. Internal Revenue Service (In re Jones)*, 359 B.R. 837, 841 (Bankr. M.D. Ga. 2006).[10] This is based on the language of 26 U.S.C. § 6402(a) which states:

> In the case of any overpayment, the Secretary, within the applicable period of limitations may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.

26 U.S.C. § 6402(a). The *Jones* court held that the debtor "has a right to a tax refund only to the extent his overpayment exceeds any pre-existing tax liability." *In re Jones*, 359 B.R. at 841. The refund did not become property of the estate subject to exemption until after the IRS has effected any offset. *Id.*

The USDA RHS has argued that the overpayment never became a refund nor property of the estate because it was offset pursuant to § 6402(a). The general rule is stated that "[i]n the case of any overpayment, the Secretary, within the applicable period of limitations may credit

---

[10]Courts adopting this emerging view include: *In re Pigott*, 330 B.R. 797 (Bankr. S.D. Ala. 2005); *Beaucage v. U.S.*, 342 B.R. 408 (D. Mass. 2006); *In re Baucom*, 339 B.R. 504 (Bankr. W.D. Mo. 2006); *IRS v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir. 2001); *Lyle v. Santa Clara Cty. Dept. Of Child Servs. (In re Lyle)*, 324 B.R. 128 (Bankr. N.D. Cal. 2005).

the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person." 26 U.S.C. § 6402(a). This statute, however, creates a distinction between tax liability and a debt owed to another agency. Once the IRS credits the amount of the overpayment "against any liability in respect of an internal revenue tax", the balance becomes a refund to the taxpayer. That balance is then subjected to other offsets in the remaining statutory provisions. While it would be clearer if the statute read ". . . and shall refund any balance to such person, subject to subsections (c), (d), (e), and (f)," the placement of the additional offsets after the conjunction indicates a different status between a tax liability offset and other liability offsets. Also, in subsection (d), the overpayment is modified with "payable to such person" indicating that tax liability is offset against any overpayment but a "past-due legally enforceable debt" is offset against any overpayment payable to such person. The overpayment becomes a refund after tax liability is offset but before other liability is offset. The debtors have a right to the refund which would be subject to the right of offset by the USDA RHS. Contrary to the argument of the USDA RHS, the overpayment became a refund prior to any offset against its claim.

While this Court recognizes the unitary creditor theory reasoning and its application to the federal government, there remains a significant difference between offsetting a 2010 tax refund against a 2009 tax liability and offsetting the same 2010 tax refund against a 1998 notice of a past due debt based on a guaranty. The § 362(a) automatic stay does not apply in the former

15

situation. *See* 11 U.S.C. § 362(b)(26).[11] Additionally, in the former situation, the debtor becomes obligated to the government because of a failure to pay a tax liability. In the latter, the debtor becomes obligated to the government when it pays the guarantee after foreclosure. There is less risk of non-payment with tax liability as compared to a guaranty. Finally, the right to offset comes from two different subsections. *Compare* 26 U.S.C. § 6402(a) and 26 U.S.C. § 6402(d).

These cases following this emerging trend have only dealt with the IRS setting off an overpayment against tax liability owed to the IRS. This case involves the setting off of a tax refund against a debt owed to a different federal agency. As discussed, the emerging trend can be appropriately limited to situations involving the offset of tax liability against tax overpayment. *See* 11 U.S.C. § 6402(a) (right to setoff granted to other federal agencies falls after the conjunction in the statute). Therefore, the RHS USDA cannot find support in this emerging line.

Furthermore, while *Luongo* did not create the emerging view until three years after *Alexander*, no court in this district has adopted the *Luongo* reasoning, even though similar facts have been considered multiple times.[12] "When a court is confronted with a question of law previously decided in a past decision, the doctrine of *stare decisis* comes into play. *In re Vargas*,

---

[11]It is interesting that the government's computer program has been setup to prevent a violation of the automatic stay by halting setoff with notice of the bankruptcy when the Code has provided a specific exception but not when it would actually be a violation of the stay.

[12]The *Houchens* and *Harrison* opinions relied on the set-off occurring pre-petition, prior to the creation of an estate, to hold that the refund could not be exempted. The *Bryant* opinion recognized that the "exempt property shall not be liable either *during* or *after* the bankruptcy for a debtor's prepetition debts," but held because the IRS had filed a tax lien prepetition, the right to setoff could be exercised. *In re Bryant*, 399 B.R. 477, 479 (Bankr. W.D. Ky. 2009).

16

342 B.R. 762, 764 (Bankr. N.D. Ohio 2006).  As guided by the Supreme Court, prior to departing from a past decision, a "special justification" is needed.  *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).  Examples of "special justification" to depart from past precedent include, "the governing decision is unworkable or badly reasoned, or new and very persuasive arguments are presented that were not previously considered."  *In re Vargas*, 342 B.R. at 765 (citing 19 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 134.06[1] (3rd ed. 1997).  While the *Luongo* arguments may not have been previously considered, even if this court considered it to be very persuasive, it would only possibly change the holding of *Alexander* in an offset of tax liability against tax overpayment, not offset of other federal liability against tax refund.

The burden is on the creditor asserting the setoff right to show that it comes within the parameters of 11 U.S.C. § 553.  Considering a totality of the particular facts and circumstances, the USDA RHS has failed to carry its burden.  *See, for example, In re Carpenter*, 14 B.R. 405 (Bankr. M.D. Tenn. 1981).

## CONCLUSION

While the Court does not find a willful violation of the automatic stay, the failure of the USDA RHS to move for relief from the stay leads this Court to consider the improvement in position that would result in allowing the USDA RHS to set-off.  The USDA RHS had no right to set-off on December 26, 2010, so it is only losing a right that it gained during the preference period.  Additionally, the statute granting the right to set-off treats the two debts differently and so will this Court.  Finally, this Court will remain with the majority position that the exemption trumps the right of set-off in a chapter 7 when the right is not exercised pre-petition.  This Court,

therefore, will issue an order requiring the USDA RHS to release the monies held in the "Unapplied Funds" account and remit them to the Debtors.

*Thomas H. Fulton*
Thomas H. Fulton
United States Bankruptcy Judge

Dated: June 7, 2012